# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 825 | **DATE** | 4/19/2011 |
| **CASE TITLE** | Merit Management Group v. Ponca Tribe of Indians of Oklahoma | | |

**DOCKET ENTRY TEXT**

Motion by Defendant Ponca Tribe of Indians of Oklahoma to vacate [22] is granted. The case is dismissed for lack of subject-matter jurisdiction.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Defendant Ponca Tribe of Indians of Oklahoma ("the Tribe") moves pursuant to Fed. R. Civ. P. 60(b)(4) to vacate the default judgment entered against it in this Court on September 5, 2008. For the reasons discussed below, the motion is granted.

In January 2005, plaintiff Merit Management Group ("Merit") agreed to loan the Tribe $122,500. When the Tribe allegedly failed to repay the amount due under the terms of the agreement, Merit filed suit in this Court for breach of contract. In doing so, Merit invoked the court's diversity jurisdiction. Despite being served with process and receiving notice of the proceedings, the Tribe never answered or responded to the suit. In September 2008, I entered a default judgment against the Tribe in the amount of $158,896.10 (plus additional amounts for legal fees and costs). In February 2011, after Merit filed an action in Western District of Oklahoma to enforce the judgment, the Tribe filed the instant motion in this Court seeking to vacate the judgment. The Tribe claims that the judgment is void because subject-matter jurisdiction was lacking over Merit's suit.

It is well-settled "that Federally recognized Indian tribes enjoy sovereign immunity from suit because they are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Big Horn County Elec. Co-op., Inc. v. Adams*, 219 F.3d 944, 954 (9th Cir. 2000). As a result, tribes are not citizens of states and, accordingly, are not subject to diversity jurisdiction. *See, e.g.,*

*Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007) ("[A]n Indian tribe is not a citizen of any state and cannot sue or be sued in federal court under diversity jurisdiction."); *see also Frazier v. Brophy*, 358 Fed. App'x. 212, 213 (2d Cir. 2009); *Ninigret Development Corp. v. Narragansett Indian Wetuomuck Housing Authority*, 207 F.3d 21, 27 (1st Cir. 2000); *CTGW, LLC v. GSBS, PC*, No. 09-cv-667-bbc, 2010 WL 2739963, at (W.D. Wis. July 12, 2010) (collecting cases). Thus, "[a]bsent congressional or tribal consent to suit, state and federal courts have no jurisdiction over Indian tribes; only consent gives the courts the jurisdictional authority to adjudicate claims raised by or against tribal defendants." *George v. Sycuan Casino*, 19 Fed. App'x. 623, 624 (9th Cir. 2001) (quotation marks omitted). Courts have repeatedly emphasized that any waiver of sovereign immunity must be clear and unambiguous. *See, e.g.*, *Nanomantube v. Kickapoo Tribe in Kansas*, 631 F.3d 1150, 1152 (10th Cir. 2011) ("[T]he waiver or abrogation of sovereign immunity must be unequivocally expressed rather than implied.") (quotation marks omitted).

Merit argues that the Tribe consented to being sued by virtue of an "exclusivity agreement" that the parties signed in connection with the loan transaction. In particular, Merit cites section 5 of the agreement, which in relevant part provides:

> (a) <u>Limited Waiver of Sovereign Immunity</u>. The parties acknowledge that the Tribe is a federally recognized Indian Tribe and that the Tribe and its instrumentalities possess sovereign immunity from unconsented suit and other legal proceedings. Nothing in this Agreement shall be deemed to be a waiver of any Tribal Party's sovereign immunity, except as provided in this Section 5. Notwithstanding the foregoing, with respect to all Claims, the Tribe hereby irrevocably waives its sovereign immunity and the sovereign immunity of all other Tribal Parties, and all defenses based thereon, to permit as provided in this Section: (i) the adjudication or enforcement of Claims in any federal or state court of competent jurisdiction sitting in the State of Oklahoma and all courts to which appeals therefrom may be taken (each, a "**Non-Tribal Court**"), (ii) the arbitration of Claims as provided in Section 5(e), and (iii) judicial proceedings before any Non-Tribal Court or before any court or other forum of the Tribe of competent jurisdiction (each, a "**Tribal Court**") to determine the arbitrability of such Claim pursuant to this Section 5, or to enforce, modify, or vacate any arbitration award arising from such arbitration. The Tribe hereby irrevocably consents to the jurisdiction and venue of all Non-Tribal Courts and Tribal Courts.

Exclusivity and Dispute Resolution Agreement (Doc. 29-1) ¶ 5(a).

Merit seizes on the provision's final sentence, "[t]he Tribe hereby irrevocably consents to the jurisdiction and venue of all Non-Tribal Courts and Tribal Courts," as evidence that the Tribe has completely waived its

sovereign immunity. When read in its entirety, however, it is clear that the terms "tribal court" and "non-tribal court" are defined in specific terms. In particular, a "non-tribal court" is, by definition, applicable only to courts located in Oklahoma (i.e., "any federal or state court of competent jurisdiction sitting in the State of Oklahoma and all courts to which appeals therefrom may be taken."). And if, as Merit claims, the Tribe intended categorically to waive its sovereign immunity, it is difficult to understand why it should have included it in a provision bearing the heading, "Limited Waiver of Sovereign Immunity." In consenting to jurisdiction in all "non-tribal courts," therefore, the Tribe did not waive sovereign immunity except in Oklahoma.

Merit advances a number of additional arguments, but these are unavailing. For example, Merit argues that the consent provision in the exclusivity agreement is permissive, not mandatory. According to Merit, many circuits have held that whereas a "mandatory forum selection clause has express language limiting the action to the courts of a specific locale which is clear, unequivocal and mandatory," a "permissive forum selection clause authorizes jurisdiction or venue in a selected forum, but does not prohibit litigation elsewhere." Resp. at 6. However, Merit does little to explain why the agreement's waiver clause should be regarded as permissive rather than mandatory. In any case, this is hardly the kind of unambiguous waiver necessary for a Tribe to consent to suit.

Merit further maintains that "it could be argued that since we are dealing with an Indian Tribe that does not technically 'reside' within any particular state, the jurisdiction of any federal district court over an Indian Tribe that waives its sovereign immunity is the same." Resp. at 5. "In other words," Merit explains, "just as two parties cannot contractually confer jurisdiction to a federal court, there is no case that holds that an Indian Tribe can contractually limit the jurisdiction of all federal courts (in favor of one particular federal district) once sovereign immunity has been waived." *Id.* Merit fails to cite a single case in support of this claim. In fact, case authority runs to the contrary. *Cf. Missouri River Services, Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 852 (8th Cir. 2001) ("Because a waiver of immunity is altogether voluntary on the part of a tribe, it follows that a tribe may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted. In addition, if a tribe does consent to suit, any conditional limitation it imposes on that consent must be strictly construed and applied.") (quotation marks, citations, and brackets omitted).

Finally, Merit argues that it would "not be fair to Merit or the federal court system's integrity to grant this Motion because of the Tribe's abuse of the system and disregard for its fundamental obligations of contract and law." Pl.'s Resp. at 3. Nevertheless, the law is clear: courts have repeatedly affirmed that challenges based on subject-matter jurisdiction can be raised at any time. *See, e.g., Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011) ("Objections to subject-matter jurisdiction, however, may be raised at any time. Thus, a party, after losing at trial, may move to dismiss the case because the trial

| STATEMENT |
|---|

court lacked subject-matter jurisdiction."); *United States v. Aloysius*, 101 Fed. App'x. 947, 949 n.3 (5th Cir. 2004)(although appellant did not move until 2003 to set aside 1994 order vacating his naturalization, there is no time limit on an attack of a judgment as void); *O'Rourke Bros. Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 950 (7th Cir. 2000) ("Rule 60(b)(4) . . . provides for relief from a judgment if the judgment is void. Such relief is available at any time.") (quotation marks omitted). Notably, while motions under many of Rule 60(b)'s other subsections must be brought within a "reasonable time" (not to exceed one year), motions alleging that a judgement is void under Rule 60(b)(4) are not subject to such a requirement. *See* Fed. R. Civ. P. 60(c)(1); *see also* Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 11 Fed. Prac. & Proc. Civ. § 2862 (2d ed.) ("[T]here is no time limit on an attack on a judgment as void. The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion. A void judgment cannot acquire validity because of laches on the part of the judgment debtor.").

In short, the Tribe has shown that the default judgment entered against it was void for lack of subject-matter jurisdiction. As a result, the Tribe's motion to vacate is granted. The case is dismissed.